**BREWERY BOTTLERS & DRIVERS UNION LOCAL 1345, BROOKLYN, NEW YORK, OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Alfred P. Dunne, individually and as President thereof and Charles Molinary, individually and as Secretary-Treasurer thereof, James Kelsey, Andrew J. Weiss, William Hufnagel, Jack McLoughlin, Harry Henky, Ed Larsen**

**and**

**James Hanlon, Louis Willett, Robert McLoughlin, Walter Falko, Edward McCarthy, Tom Riley, Andrew Wachter, John Keary and Harry Brice, members of Brewery Bottlers & Drivers Union Local 1345, Brooklyn, New York, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, on behalf of themselves and all other members similarly situated, Plaintiffs,**

**v.**

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, James R. Hoffa, individually and as General President thereof, John English, individually and as General Secretary-Treasurer thereof, Defendants.**

No. 62-C-119.

United States District Court
E. D. New York.

Feb. 20, 1962.

Cooper, Ostrin, DeVarco & Ackerman, New York City, for plaintiffs.

O'Dwyer & Bernstein, New York City, for defendants.

MISHLER, District Judge.

Plaintiffs move for a temporary injunction enjoining defendants from proceeding in any manner to carry out or effect a merger of plaintiff Local 1345 with any other I.B.T. local union or unions or otherwise to suspend, limit or terminate the autonomy of Local 1345, and from conducting a referendum among the combined memberships of Locals Nos. 1, 8, 124, 329, 1059, 1096 and 1345 of the International Brotherhood of Teamsters for approval of the merger.

The action is brought by Brewery Bottlers & Drivers Union Local 1345, Brooklyn, New York, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter called Local 1345) and members of said Local 1345 on behalf of themselves and all other members similarly situated against the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter called International) and its General President, James R. Hoffa, and General Secretary, John English.

The claim stated in the complaint alleges that Local 1345 has functioned as an autonomous local union for upwards of 75 years; that its members (approximately 2500) are employed in bottling and delivering beer for five major beer companies; that they enjoy prime seniority and other valuable benefits; in 1953, Local 1345 was affiliated along with other locals with the International; under the conditions of affiliation, Local 1345 was to retain full autonomy and maintain its jurisdiction; on or about January 27, 1962, Local 1345 and six other locals affiliated with the International were advised that, the General Executive Board of the International voted to adopt a report proposing " * * a merger of 7 Teamster locals in New York City into two newly-chartered local unions." i. e., a "production" local and a "delivery" local; the referendum is to be conducted among the seven locals as one combined unit; the membership of Local 1345 is overwhelmingly opposed to the merger but the greater number of

votes of the other locals may effectively destroy Local 1345.

The gravamen of claim and the basis for invoking the jurisdiction of the Court are stated in paragraphs 25 and 26 of the complaint. It states that the merger would constitute a method of supervision or control whereby the International would be suspending the autonomy otherwise available under its constitution and by-laws and therefore a trusteeship as defined in the Labor-Management Reporting and Disclosure Act of 1959 (referred to hereinafter by the abbreviation L.M.R.D.A.). Further, that said 'trusteeship by merger' is not for the purposes set forth, in the L.M.R.D.A.

The threshold question is one of jurisdiction. The consequences of the contemplated merger, its economic effect in the industry, and the possible benefits that might accrue to the members generally are not the subject of this determination.[1]

Article XV, Section 1 of the Constitution and By-Laws of Local 1345 provides:

"This Local Constitution is at all times subject to the provisions of the International Constitution."

And Article XVII, Section 1 of the Constitution and By-Laws of Local 1345 provides:

"These By-Laws are subject to the Constitution of the International Brotherhood of Teamsters and applicable conference By-Laws."

■ It may be stated as a broad general principle that courts will not interfere with internal machinery of a labor union. The decision to become affiliated with the International was one of policy; the purported reservation of autonomy was a futile attempt to retain freedom of action while becoming an integral part of the International. The concept of the reservation of autonomy is elusive and confusing.[2]

■ Viewed by parties outside its structure, a local is seen as one of the parts of the parent union. It cannot be destroyed without the consent of the parent union. M & M Woodworking Co. v. Plywood & Veneer Workers Union No. 102, D.C., 23 F.Supp. 11. Nor can it vote to dissolve though a majority wish it. Low v. Harris, 7 Cir., 90 F.2d 783. Where the parent union constitution provides for affiliation, so long as ten mem-

1. The complaint does not charge that employees in the industry will suffer from the merger. In a report to its members, dated September 5, 1961, (opposing affidavit Exhibit 1) Local 1345 stated in part:

"It has become obvious with each passing year that our present set-up, which may have been effective when it was conceived during the 1880's, cannot effectively serve our membership and its interests in the year 1961! The urgent need for today is a unified, powerful and streamlined organization; one that can successfully negotiate with the industry and police the contracts after they are signed; a set-up which will be equipped to provide the membership with those services which have become so important, such as in the field of Welfare, Pensions, Compensation, Political Action; an organization prepared to go out and organize to the full limits of our jurisdiction. Only this type of merged organization can hope to meet the growing problems of automation, merger of companies and labor-saving programs which threaten the job-security of every member of our local unions.

In addition, a merger of the 7 locals into 2 would result in a great economy of operation and make possible a substantial improvement and expansion of direct membership services."

2. In Green v. Obergfell, 73 App.D.C. 298, 121 F.2d 46, at page 57, 138 A.L.R. 258, the Court said:

"In the language of the two instruments, upon which the appellees rely, the most persuasive word used is *autonomy*. This word has never been defined by an American court, so far as can be determined from the dictionaries and other work books. Webster defines it as meaning the power or right of self-government. Black's definition reads: 'The political independence of a nation; the right (and condition) of self-government; the negation of a state of political influence from without or from foreign powers.' Even if we were to make the far-fetched assumption of a full parallel between the Brewery Workers Union and an independent sovereign state, the result contended for still would not follow. The assumption is improper

bers in good standing favor affiliation, a vote of two-thirds of the members for withdrawal will not dissolve affiliation. M & M Woodworking Co. v. N. L. R. B., 9 Cir., 101 F.2d 938. Under Article XX of the International Constitution "No Local Union can dissolve, secede or disaffiliate without the approval of the General Executive Board while there are seven (7) dissenting members." It appears clear that autonomy does not necessarily mean the right of the majority to make decisions for the local in its relationship to the parent union.

Section 11 of Article IX of the International Constitution states as follows:

"Mergers

"Section 11. The General Executive Board in its sound discretion shall have the power to merge Local Unions and other subordinate bodies under such terms and conditions and subject to such qualifications as the General Executive Board may determine, taking into consideration such circumstances as financial conditions, jurisdiction, location, and such other facts as it appears appropriate in connection with the Local Unions and other subordinate bodies involved."

The complaint does not challenge the validity of the provision aforestated. It is not within the Court's jurisdiction to pass upon the wisdom or pro-priety of the merger of local unions. The plaintiff claims that Title III of the L.M.R.D.A. severely limited the power of the International as defined in its constitution. The complaint in effect states that the prospective merger will violate Title III of the L.M.R.D.A. entitled 'Trusteeships'. Trusteeship is defined by the L.M.R.D.A. 73 Stat. 520, 29 U.S. C.A. § 402(h), as follows:

" 'Trusteeship' means any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws."

The nub of plaintiffs' complaint is that since merger would destroy the union, its autonomy would thereby be suspended, and the merger would constitute a method of supervision or control.

The Court knows of no reported case that defines Trusteeship as used in the L.M.R.D.A. in determining whether a merger is a " * * * method of supervision or control whereby a labor organization suspends the autonomy * * *."

The history of the L.M.R.D.A. shows the general awareness of the abuse that brought forth the pertinent provisions. A reading of the Daily Congressional Record reveals that various Congressmen spoke out against the abuse of the power to place subordinate bodies under trusteeships or supervisorships.[3]

in any event because the Brewery Workers expressly agreed to conform to the constitution, laws, rules and regulations of the parent organization, the American Federation of Labor."

3. Senator Kennedy stated:
"Placing a Teamster local in trusteeship would no longer be available as a means of exploiting the dues and privileges of the local members; and Mr. Hoffa would have difficulty repeating power plays such as that at Pontiac, Michigan, where as a trustee, he appointed as business agents the very same officials who had been ousted by the local membership on grounds of corruption." Daily Congressional Record, January 20, 1959, p. 817.

Senator Goldwater stated:
" * * * and protect subordinate organizations and their members from abuses of the devices used to exercise supervisory control over their affairs." Daily Congressional Record, Senate, January 28, 1959, p. 1161.

Statement of James P. Mitchell, Secretary of Labor Feb. 4, 1959, before Subcommittee on Labor, Senate Committee on Labor & Public Welfare:

The conclusions of the select committee were:

That there had been an abuse of the power to place subordinate bodies under supervisorship.

The select committee found that certain international unions "flagrantly abused their power to place local unions under

The defendant, International, was the prime target of the corrective legislation.[4] The practice employed consisted of the suspension or removal of duly elected officers of the subordinate body, and the appointment by the International of its agent designated as "trustee", "receiver", or "supervisor". The authority of the duly elected officials of the subordinate union was flouted and the rights of members abrogated. The right of the parent union to appoint a trustee has not been denied it in the L.M.R.D.A.; indeed the need for such supervisory power has been acknowledged by the confirmation of such right.[5]

Congress has not denied a labor organization the right to merge local unions. Were the Court to adopt plaintiffs' definition of a trusteeship as urged here, the right of a labor organization to merge locals would be permitted only " * * * for the purpose of correcting corruption or financial malpractice * * *." Sec. 302 L.M.R.D.A., 73 Stat. 531, 29 U.S.C.A. § 462. Such an interpretation would effectively frustrate the power of a labor organization to merge subordinate local unions. Nothing in the legislative history indicates a Congressional intent to curb, limit or render ineffective the power to direct merger. The desirability of merger is usually a matter of union policy dictated by economic considerations. The differences in merger and trusteeship (or receivership, or a method of supervision or control whereby a labor organization suspends autonomy) are highlighted by the anomalies that spring forth in attempting to fit a merger within the contour of Sec. 302 of the L.M.R.D.A. as delineated by Congress. For the Court to go beyond the pale of the power defined in the L.M.R.D.A. to cure a real or fancied economic ill would be a usurpation of the legislative power.

It therefore appearing that this Court does not have jurisdiction of the subject matter stated in the complaint, motion is denied, and on the Court's motion, the complaint is dismissed. Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338. Barron & Holtzoff Federal Practice and Procedure, Volume 1, page 91.

Settle order on two days notice, directing the entry of judgment dismissing the complaint.

trusteeship or supervisorship" by imposing supervisorship without basis and for unconscionably long periods of time. It found also that supervised locals were "plundered" and used as pawns in political battles within the international unions. Daily Congressional Record, Senate, p. 1565.

4. Statement of James P. Mitchell, Secretary of Labor:
  " * * * And in its findings on the Teamsters Union the committee states:
  They have indiscriminately used the power of placing locals under trusteeships and kept these union entities in servitude when it served the interests of the union leadership to do so. When a local is under trusteeship, its members completely lose control over their finances and the right to elect their own officials.
  Some 13 percent of all the locals in the Teamsters' Union are under trusteeship. Teamster officials have admitted before the committee that they do not know the reason why some were put under trusteeship or why they remain in that state at the present time. Some of the locals have been under trusteeship for 15 years. One individual, through trusteeship, can control the destinies of many people. Mr. Hoffa is the trustee of some 17 different locals." Daily Congressional Record, Senate, Feb. 4, 1959, p. 1565.

5. "The standards required by the administration's bill would eliminate the possibility of the arbitrary assumption or exercise of supervisory control. Supervisory control would be permitted in proper circumstances because, when properly used, it is a legitimate method for correcting abuse or corruption in subordinate union organizations." Daily Congressional Record, Senate, Feb. 4, 1959, statement of James P. Mitchell, Secretary of Labor, before the Subcommittee on Labor, Senate Committee on Labor & Public Welfare, p. 1655.