Rudolph GUARNACCIA et al., Plaintiffs,

v.

Herman D. KENIN, as President, et al., of American Federation of Musicians, Defendants.

Al GURTON et al., etc., Plaintiffs,

v.

Max L. ARONS and Al Manuti, Defendants.

United States District Court
S. D. New York.
Sept. 3, 1964.

Burton H. Hall, New York City, for plaintiffs.

McGoldrick, Dannett, Horowitz & Golub, New York City, Emanuel Dannett, and Melvin H. Osterman, Jr., New York City, of counsel, for defendants Kenin and others.

Ashe & Rifkin, New York City, David I. Ashe, New York City, of counsel, for defendants Arons and Manuti.

TENNEY, District Judge.

### FINDINGS OF FACT

Plaintiffs, by Order to Show Cause, seek a preliminary injunction enjoining the defendants as officers of the American Federation of Musicians (hereinafter referred to as "AFM") "from effectuating or attempting to effectuate" a ruling of the International Executive Board (hereinafter referred to as "Board") which had declared two resolutions previously put to, and passed by, the membership of Local 802, Associated Musicians of Greater New York (hereinafter referred to as "Local 802"), null and void.

Plaintiffs bring this action on their own behalf and on behalf of all other members of Local 802.

This action is one facet of a continuing controversy, others of which have been the subject of prior litigation in this Court. See, e. g., Gurton v. Manuti, 235 F.Supp. 50 (S.D.N.Y. May 8, 1964); Rothstein v. Manuti, 235 F.Supp. 48 (April 13, 1964 Per. Levet, J.); Rothstein v. Manuti, 235 F.Supp. 39 ¶ 18,650 (S.D.N.Y.1963), and in the New York Supreme Court, New York County, Rothstein v. Manuti, 49 CCH Lab.L.Rep. ¶ 51,024 (S.Ct.N.Y. March 4, 1964).

From the opinions rendered in the cases cited supra, and the affidavits filed herein, it would appear that the plaintiffs, as members of Local 802, are a faction of the Local at odds with the incumbent leadership. The dispute centers around the role that full-time or part-time musicians, such as plaintiffs, should play in the functioning of the Local vis-a-vis the non-active or occasional musicians who make up a majority of the membership.

The incumbent officers of Local 802, as individuals, are named defendants in the second motion to be decided herein, viz., Gurton v. Arons, 64 Civ. 2292, (July 23, 1964).

The present complaint alleges a violation of Section 101(a) (1) & (2) of the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter referred to as "LMRDA"), 73 Stat. 522, 29 U.S.C. § 411(a) (1) & (2) (Supp.1963).

The jurisdiction of this Court is based on Section 102, LMRDA, 73 Stat. 523, 29 U.S.C. § 412 (Supp.1963).

The conduct which plaintiffs allege violates those Sections consists of the action of the Board of AFM in declaring null and void two resolutions duly passed at a by-laws meeting of Local 802, held on May 18, 1964.

There is no substantial dispute as to the facts.

In February 1964, Local 802 submitted to a referendum vote of the entire membership a proposition amending the Local's By-Laws to provide that election of officers of the Local "shall be held by a referendum secret mail vote" conducted by the Honest Ballot Association. The election procedures adopted as part of the referendum contain the following provisions:

Article VI, Section 3 provides:

"Each duly nominated and qualified candidate shall have the right either in person or through a representative, to inspect the membership rolls of the Local prior to the mailing of the ballots and to be present at the counting of the ballots by the Honest Ballot Association."

Section 8 of Article VI provides:

"All members whose dues are paid through the third quarter of the election year shall be eligible to vote in the election of officers."

Section 9 provides that protests to the election can be filed with the Honest Ballot Association with a further appeal to the American Federation of Musicians, Local 802's parent group.

"The Honest Ballot Association shall have authority to make any investigations, including the right to inspect any records, prior to or after the election has been completed, for the purpose of insuring an honest election."

As part of the referendum, but separately voted upon and approved 12,546 to 2,236, was the following:

"Notwithstanding any other provisions of these By-Laws, this Article [i. e., the election of officers by secret ballot mail vote, etc.] can be repealed only by a referendum mail ballot vote of the members."

The referendum vote resulted in the adoption of the proposition by a vote of 12,654 in favor and 2,206 against.

Thereafter, Messrs. Rothstein and Gurton (two of the named plaintiffs herein) proposed two amendments for consideration at the Local's by-laws meeting scheduled for May 1964. Article VIII, Section 1(b) of Local 802's By-Laws requires that all proposed by-law amendments and changes which are to be considered at the May by-laws meeting must be submitted to the Secretary of the Local on or before March 1st, and that the proposed resolutions so submitted be printed in the official journal of the defendant at least thirty (30) days prior to the meeting. Article VIII, Section 3, requires the Executive Board to publish its report on the amendments prior to the meeting. Both proposals were submitted prior to March 1, 1964.

The Gurton proposal provided as follows:

"Whereas;

"The referendum of Feb. 15, 1964 provides for the conduct of the election of Local 802 officers, board members and delegates by mail ballot,

and whereas;

"the said Referendum Resolution does not provide adequate safeguards for establishing the eligibility and identity of those voting in a mail election,

and whereas;

"the said Referendum Resolution in fact repeals an important safeguard previously provide [sic] by Art. VI, Sec. 8 requiring every member who desired to vote to furnish documentary proof of his identity by means of a 'certificate, registration card, or license issued by a Municipal, State, or Federal governmental body, agency, department, or board', in addition to his Union card,

and whereas;

"the said Referendum Resolution fails to provide adequate machinery for ascertaining whether or not the members voting in a

mail election are in good standing in Local 802 and in all other locals of the AFM to which they may belong, as provided by the Federation By-Laws;

"Therefore be it resolved;

"that a new section be added to Art. VI as amended to read as follows:

"Sec. 12. No member shall be eligible to receive a ballot or to vote in a mail election of officers, board members, and delegates unless he shall have issued to him by the Secretary of the Local a Certificate of Eligibility to Vote, identifying him by name, address, and card number as an eligible voter. Such Certificate of Eligibility shall be obtainable by applying in person to the Secretary of the Local at any time between Sept. 1st through Sept. 30th of the election year during regular business hours of the Local. Such Certificate of Eligibility shall be issued only to each member who properly identifies himself, shows that he is in good standing in all locals of the AFM to which he belongs, and signs a register which shall also clearly set forth his card number and correct address; and

"Be it further resolved;

"that immediately after the close of the registration period the Secretary shall make the register available for inspection to all candidates who request such inspection. The Secretary shall further prepare printed copies of the list of all registered voters and their correct addresses and shall provide a copy of such list to each candidate for office on or before October 15th of the election year; and

"Be it further resolved;

"that upon enactment this amendment may not be repealed or amended either before or after its effective date except at a duly convened membership meeting,

anything to the contrary in these By-Laws notwithstanding."

/s/ Al Gurton.

The Rothstein proposal reads:

"WHEREAS: More than 5,000 members of Local 802 live outside a 75-mile radius of New York City and have no contact with the Local, its officials, and its affiairs; and

"WHEREAS: Half of the membership did not vote in the last referendum on the subject of holding elections of officers by mail ballot, indicating that between 10,000 and 15,000 members living in New York are completely divorced from and uninterested in local union affairs; and

"WHEREAS: Many persons who are uninterested and therefore uninformed about union affairs and officials will vote a mail ballot only because it is at hand, thereby diluting the votes of those who do care and whose livelihoods are involved; and

"WHEREAS: Many thousands of Local 802's members also belong to other locals of the AFM, and a mail ballot provides no method of checking on whether they are in good standing in these other locals, thus allowing members not in good standing in the AFM (and therefore not in good standing in Local 802) to vote;

"THEREFORE BE IT RESOLVED: that the Referendum Resolution enacted on or about February 15, 1964, and which is not to be effective until July 1, 1964, pertaining to election of officers by mail ballot, is hereby rescinded and annulled as if it had never been enacted. Election of all officers of the local shall be conducted by voting in person in accordance with the presently existing By-laws of the Local; and

"BE IT FURTHER RESOLVED: that upon enactment this amendment may not be repealed or

amended either before or after the effective date thereof except at a duly convened membership meeting, anything to the contrary in these By-laws notwithstanding."

/s/ Murray Rothstein

By identical letters mailed to each of the plaintiffs and dated April 7, 1964, Max Arons, Secretary of Local 802, rejected and returned the proposals:

"Dear Sir and Brother:

"I have been instructed by the Executive Board to advise you that in view of the fact that the enclosed proposal seeks to revoke the resolutions adopted by referendum it may not be submitted again for a period of one year, under Article 8, Referendum, Section 3 of the By-Laws.

"Your resolution is therefore being returned to you.

"Fraternally yours,

"/s/ Max L. Arons

"MAX L. ARONS, Secretary

"Local 802, A. F. of M.

After the rejection by Arons, Gurton and Rothstein brought suit in this Court (64 Civ. 1158 (April 14, 1964)) to enjoin the officers of Local 802 from "refusing to entertain the motions duly submitted by them." They then moved, by Order to Show Cause, for a preliminary injunction.

On April 24, 1964, the Honorable Richard H. Levet entered an order stating that he was of the opinion that Gurton and Rothstein had not exhausted their intra-union remedies of appeal to the International Executive Board, and that in view of this he would hold in abeyance any disposition of the motion made for a preliminary injunction. Gurton v. Manuti, 235 F.Supp. 50 (S.D.N.Y. May 8, 1964).

On April 25, 1964, Gurton and Rothstein appealed to the Board of AFM. The Board denied the appeal, upholding the decision of the officials of the Local in rejecting the two proposals. It held that the "proposed resolutions are contrary to and would subvert the intent, purpose and spirit of the [February 1964] resolution," which provided in addition to the method of election by mail ballot that "the electoral system so established by referendum vote shall not be altered, changed or amended except by another referendum vote." [1] The Board further held that the Rothstein amendment "clearly violates the requirements of the February 1964 referendum vote", and that the Gurton resolution "would impose a hitherto non-existent personal registration obligation upon Local 802 members * * * clearly contrary to the purpose and intent of the February 1964 resolution."

In justification of its rejection of the resolutions, Local 802 relied *inter alia* on: (a) the provisions of the referendum that it "can be repealed only by a referendum mail ballot vote of the members," and (b) the provisions of Article VIII, Referendum 3 of the By-Laws which provides:

"No proposal shall be submitted for a referendum more than once within a twelve-month period. And it shall not be permitted to submit a proposal the contents of which are similar in nature to a proposal already acted upon by referendum, unless twelve months have passed since the original proposal has been acted upon."

The Local thus argued that the By-Law prohibited a vote on these proposals within twelve months of the February 1964 referendum (hereinafter referred to as "Referendum").

Judge Levet, in his decision, Gurton v. Manuti, 235 F.Supp. 50 (S.D.N.Y. May 8, 1964), initially rejected the Local's interpretation of the above quoted By-Law, in that it specifically refers to and prohibits proposals submitted by referendum "not to subsequent amendment submitted to a By-Law meeting", id. 235 F.Supp. at 55. Since the proposals

---

1. Actually, the resolution of the February 1964 referendum prohibited *repeal* of the amendment to the By-Laws except by referendum. No mention was made of alterations, changes or amendments.

of Gurton and Rothstein were to be submitted to a by-law meeting, the interpretation of the By-Laws by the Local "simply lacks any validity." Ibid.

Judge Levet then went on to observe that, even if the Local's interpretation of the By-Law were proper, only the Rothstein proposal, clearly contrary to the referendum, would thereby be invalidated. However, since "[t]here is nothing in the Gurton proposal which is contrary to the recently enacted referendum" [id. at 56] the Local would still not be justified in refusing to submit it to the membership.

After finding that "the violation of federal law is clear", Judge Levet enjoined the Local from refusing to put the two motions on the agenda of the May 18, 1964 by-law meeting.

More specifically, by an order signed May 11, 1964, Judge Levet enjoined Local 802 "its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with any of them * * * from refusing to put the resolutions * * * on the agenda for the meeting of May 18, 1964, and from preventing or refusing to permit the membership of defendant [Local 802] at the said meeting or at any continuation thereof to consider and vote upon the said resolutions and by such vote to adopt or reject them."

Pursuant to the above order, the resolutions were duly placed on the agenda for the May 18, 1964 meeting and were passed by a majority of the 1,500 members present.

Shortly thereafter, on or about June 3, 1964, the officers of Local 802 appealed to the International Executive Board of AFM from the action taken at the membership meeting of May 1964; to wit, the adoption of the Gurton and Rothstein resolutions.

The grounds for appeal were that the resolutions violate both Section 101(a) (1) & (2) of the LMRDA, and "the principles of Federation and of labor union democracy", that the Rothstein proposal annulled the referendum which by its terms could only be repealed by a referendum mail vote, and that by its action a minority of the membership had imposed its will on the majority by a vote of four percent of the total membership, annulling that which had been passed by fifty percent of the membership. The Local further argued that the Rothstein proposal violated the LMRDA in that it disenfranchised those members who could not physically be present to vote.

With regard to the Gurton resolution, Local 802 argued, as it had when it originally refused to place the resolutions on the agenda, that this proposal would in effect emasculate the referendum since it would be impossible for many members to come during the month of registration and register to vote, nor could the Secretary of the Local register the 28,000 members during that period. The main thrust of its argument, however, was, as it was in opposition to the motion before Judge Levet, that the effect of the Gurton resolution would be to disenfranchise those members who are out of the City and could not appear in person during business hours in order to register. And, further, that by reason of the in-person registration requirements and the consequent disenfranchisement of members in good standing, Section 101(a) (1) & (2) would be violated in addition to the By-Laws of Local 802.

The jurisdiction of the Board to hear the appeal was based on Article 8, Section 12, of the Constitution of AFM, which provides that an appeal may be taken by officers of a Local from action by the Local if in their opinion a meeting "took a stand in violation of the principles of the Federation."

Gurton and Rothstein filed a reply to the appeal in which they set forth their position and cited extensively from Judge Levet's decision.

On July 17, 1964, the Board handed down its decision sustaining the appeal and declaring both resolutions to be null and void.

The Board initially set forth its prior decision sustaining the Local's refusal to

place the proposals on the agenda, viz., that the referendum had "prohibited any change in or abolition of the secret mail ballot election procedure except by subsequent mail referendum vote", and since both resolutions were to that end they were properly refused. It then set forth its interpretation of Judge Levet's opinion that to prohibit the members from presenting the resolutions would constitute a violation of the LMRDA, and that the Court's order was "duly obeyed by the submission of the resolutions to the Local 802 membership." However, the Board observed, the opinion did no more than require the submission and as such does not restrain the Board from exercising its function as an intra-union tribunal and determining the substantive propriety of the proposals.

The decision of the Board would appear at least in part to be based on the same considerations that motivated its prior decision. Thus the Board stated that both resolutions in its opinion were inconsistent with the referendum, the Rothstein resolution by its terms, the Gurton resolution by its effect in placing "onerous" conditions on eligibility to vote and thus substituting "limited suffrage for the universally available mail ballot." And as a result of the passage of the resolutions the Local had taken a stand "in violation of the principles of the Federation." (Article 8, Section 12, the AFM By-Laws).

As a second basis for its decision, the Board relied on Article 12, Section 6 of AFM's By-Laws which provide:

"A Local failing to enforce its own laws or submitting to unjust, unfair or improper conditions forced upon it by the arbitrary ruling of packed meetings or through the influence of members who control the situation must after a proper investigation submit to such decision arrived at by the officers of the Federation as in their opinion may correct the situation."

The purpose of that Section of the By-Laws, as viewed by the Board, "is to prevent a minority from seizing control of a Local by abuse of temporary power and effectuating changes adversely affecting the rights of the majority." This, the Board reasoned, was the effect of the Local's action in adopting the Rothstein resolution, which had nullified the referendum vote of over fifty percent of the members, and the Gurton resolution as well. Additionally, the Board held both resolutions invalid in that they violated Roberts' Rules of Order which state that rules protecting the rights of absentees cannot be suspended unless by unanimous vote or their consent, and since the referendum provided for repeal only by referendum the by-law meeting vote was null and void. [Rule 7, Roberts' Rules of Order (75th Ann.Ed.)].

Particularly with respect to the Gurton resolution, the Board held that it would make ineligible for voting those members unable to come and register during September and, as such, a minority of members in passing the resolution would disenfranchise a majority of members, thus violating Article 12, Section 6 of the By-Laws quoted supra.

On July 23, 1964, this action was commenced against the officers of AFM who had declared the two resolutions null and void. By Order to Show Cause, dated July 28, 1964, the plaintiffs brought on the within motion for a temporary injunction enjoining the defendants from giving effect to the aforementioned decision of the Board and directing them to withdraw and/or countermand said decision.

The position of plaintiffs in support of the motion is a simple one—the Board, by declaring the proposals null and void, is accomplishing in effect and for basically the same reasons that which the Local was enjoined from doing in fact; to wit, prohibiting the membership from voting and "adopt[ing] or reject[ing]" the resolutions.

### CONCLUSIONS OF LAW

The complaint and motion for preliminary injunction are based on Sections 101(a) (1) & (2) of the LMRDA, 73

Stat. 522, 29 U.S.C. § 411(a) (1) & (2) (Supp.1963), which provide:

"§ 411. Bill of rights; constitution and bylaws of labor organizations.

"(a) (1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

"(2) Freedom of speech and assembly.—Every member of any labor organization shall have the right to ' meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."

The thrust of the within action is that the "ruling of the International Executive Board was and is unreasonable and invalid and in violation of the constitution and by-laws of the defendant and of Local 802 and deprives members of Local 802 of the rights to vote in elections of Local 802 and to participate in the deliberations and voting upon the business of meetings of Local 802 in accordance with the reasonable rules and regulations in Local 802's constitution and by-laws." (Complaint, ¶ 17.) Further, that by

reason of that ruling "members of Local 802 will be [denied their Section 101 rights] * * * including the said right of each member to vote in elections of Local 802 and to participate in the deliberations and voting upon the business of such meetings." (Complaint, ¶ 18.)

The defendants initially question the Court's jurisdiction to hear and determine the within motion. Thus defendants assert that the mere claimed violation of a union By-Law or other asserted injustice is not in itself sufficient to invoke federal jurisdiction.

█ As a general proposition, this cannot be disputed. However, the By-Laws of a union are only the starting point of any analysis in determining violations of the statute. Thus the statute can be violated under certain circumstances when By-Laws are complied with, Harvey v. Calhoon, 324 F.2d 486 (2d Cir. 1963), cert. granted, 375 U.S. 991, 84 S.Ct. 633, 11 L.Ed.2d 478 (1964), as well as where they are not complied with, Gurton v. Manuti, 235 F.Supp. 50 (S.D. N.Y. May 8, 1964).

█ Accordingly, the inquiry must be directed "towards determining whether the conduct, irrespective of its compliance with or contravention of the By-Laws and Constitution, violates the rights guaranteed by Section 101, 29 U.S.C. § 411." Gurton v. Manuti, supra, at 54. If a violation is shown the Court has jurisdiction under Section 102; if not, the Court is without jurisdiction.

However, an examination of the complaint reveals no allegation of a denial of "equal rights to vote," protected by Section 101. The plaintiffs do not allege that the February referendum, which is now in effect as a result of the Board's action, deprives them of those rights, nor could they in view of the more universal suffrage provided therein, nor do they allege that the Board's action in annulling the resolution deprives plaintiffs of "equal rights and privileges within such organization to nominate candidates to vote in elections or referendums * * * and to participate in delibera-

tions and voting upon the business of * * * meetings." The plaintiffs do allege an indirect deprivation of their rights or, as alleged, a "retrospective" deprivation; to wit, that the Board's interpretation of the By-Laws (Article 8, § 12, Article 12, § 6) in annulling the resolutions in effect makes the right to vote one without substance, and thereby in effect deprived them of equal rights to vote, and a prospective deprivation in that as a result of the Board's decision the two resolutions can only be adopted in the future by a referendum vote, not by a vote at a by-law meeting. Thus it would appear that plaintiffs allege that the legislative intent and spirit of the statute were violated rather than any specific provisions.

The Board, in its decision, determined that the Rothstein resolution was inconsistent with the referendum in fact, and that the Gurton resolution was inconsistent with the referendum in effect. Thus, as a first basis for the decision the Board held that, substantively speaking and based on the facts presented, the resolutions were actions of a minority inconsistent with the will of the majority as manifested in the referendum, and a violation of Federation By-Laws. However, as a second and more important ground, the Board held that both resolutions constituted an attempt by a minority of members (which plaintiffs concede they are) to wrest control from, and in violation of, the rights of a majority of the membership, and that based on a substantive consideration of the resolutions, they should be declared null and void, under the power conferred on the Board by the By-Laws of AFM to take such action (Article 12, § 6).

Plaintiffs place great reliance on the decision by Judge Levet. However, as I read the decision, it was, as defendants contend, a determination that pursuant to the Local's By-Laws these resolutions must be submitted to the membership. The Court's action was necessitated by an erroneous interpretation by the Local of Article VIII, Referendum, Paragraph 3. As a further and alternative ground

for the propriety of submitting the Gurton resolution, Judge Levet found it to be fair and not contrary to the referendum. However, after observing that the resolution was fair, Judge Levet went on to state that "[h]e [Gurton] seeks here only the right to have the membership act upon his proposal", Gurton v. Manuti, supra, at 56, and that "[t]he refusal of the Executive Board to permit the membership to vote on the Rothstein and Gurton proposals would appear at this preliminary stage of the litigation to constitute a flagrant violation of the plaintiffs' rights guaranteed by Section 101(a) (1) and 101(a) (2)". Ibid.

Of necessity, then, the only issue presented to Judge Levet was whether the two proposals should be submitted pursuant to the Local's By-Laws. Thus the decision is limited to a determination that the Local's By-Laws were incorrectly interpreted and the Local must permit the resolutions to be placed on the agenda.

The decision, however, as the Board correctly perceived it, did not rule on the substantive propriety of the resolutions, nor did it examine the propriety of the resolutions as they related to the AFM constitution, for that is the function of the Board as the intra-union tribunal in accordance with the procedures prescribed by the Federation's Constitution and By-Laws.

■ Plaintiffs cite no authority for the power of this Court to review and nullify a determination of a union tribunal where equal right to vote has been given and where the parent body, subsequently in accordance with its By-Laws, based on facts before it, makes a substantive determination as to the propriety of the matters voted upon. Plaintiffs cite the By-Laws of the Local which give members the right to vote and adopt By-Laws at membership meetings. However, those provisions are subject to, and superseded by, the overriding power of the Federation to act pursuant to Article 12, § 6, and that Section, as well as the entire Federation Constitution and By-Laws, is binding on the Local and its

members. (Constitution AFM, Article 3, § 4 (1962)).

The appeal to the Board by the officers of Local 802 presented the Board with two *factual* questions:

(a) Whether in violation of a specific By-Law of the Federation a minority of the membership was attempting to seize control of the Local and thereby frustrate the will of the majority of the membership; and

(b) Whether the proposed requirement for registration of voters would have the effect of disenfranchising large numbers of the members of the Local.

█ The decision of the Board nullifying the two resolutions passed would appear to have a basis in the facts presented to it. The Rothstein proposal was clearly contrary to the will of the majority as manifested by the referendum. By a vote at a meeting attended by approximately 1,500 of 28,000 members, less than four percent of the membership were seeking to overturn a determination reached by 12,000 members or over forty-five percent of the membership. As far as the Gurton resolution was concerned, it would have, by a vote of *less* than four percent of the membership, in effect disenfranchised those members unable to register during the registration period. Thus, rather than broadening the right to vote, which was clearly the intent of the majority in passing the referendum, the Gurton proposal would in effect restrict the participation in union affairs and voting rights to those members who were working close enough to the Local to register during the business hours of the Local.

Accordingly, with these facts presented to it, the Board had at least some basis for the determination that it made, that the right to vote would be limited and many members disenfranchised if the action taken were permitted to stand. It would appear then that the Board's action in exercising the power conferred upon it was not arbitrary and without foundation in fact, as plaintiffs allege.

Plaintiffs' contention that the Federation has indirectly prevented them from exercising equal rights to vote by nullifying their action, while novel, finds no support in law.

█ The United States District Courts are creatures of statutes, enacted in pursuance of the Constitution, and are courts of limited jurisdiction. Accordingly, this Court has no jurisdiction other than that specifically conferred upon it by an Act of Congress within the limits defined by the Constitution. Kline v. Burke Constr. Co., 260 U.S. 226, 233–234, 43 S.Ct. 79, 67 L.Ed. 226 (1922).

█ The statute protects certain enumerated rights of union members—one of them being the equal right to vote, equal to other members of the union. In the instant case plaintiff has not been deprived of that right, since there is no allegation that plaintiff is being treated any differently from other union members in connection with voting rights. Absent a showing of discriminatory practices by the union against them, plaintiffs have no standing to sue under Section 101(a) (1) of the Act. See Robins v. Rarback, 63 Civ. 1017, Opinion No. 28921 at 5–7, (June 11, 1963, S.D.N.Y., per Croake, J.), rev'd on other gds., 325 F.2d 929 (2d Cir. 1963).

In addition, plaintiffs did "participate in the deliberations" and did vote "upon the business" presented at the meeting. The right guaranteed by the statute is the right to participate and vote, and plaintiffs have not been deprived of any rights guaranteed to them.

I might observe, however, that the "right" which plaintiffs contend has been taken from them is, in effect, the "right" of a minority group to utilize discriminatory voting procedures to take control of the union contrary to the will of the majority, the very "right" which the statute was designed to protect against. Cf., II Legislative History LMRDA 1131 (1)–(2) (NLRB ed. 1959) (Remarks by Senator Kennedy concerning one of the purposes of Section 501 as being "to prevent the misuse of union

funds by a majority at a meeting when the majority represents only a very small minority of the members * * *.")

Plaintiffs, by joining a union, become parties to a contract between themselves, the Local and the Federation, and as parties to the contract agree to be bound by its terms as set forth in the Constitution and By-Laws of the union. Smith v. General Truck Drivers, etc. Union, Local 467, 181 F.Supp. 14, 17 (S.D. Calif.1960). And as a necessary corollary of that theory, if certain powers are conferred by that contract on the parent body, plaintiffs agree to submit to any decision reached as a result of the proper exercise of that power. The Constitution gives the Board certain authority under Article 12, § 6, and they have now exercised the power conferred in a manner not held to be violative of the statute, and with adequate factual basis for its exercise.

The clear language and import of Section 101(a) (1) is to guarantee to union members certain rights specifically set forth—however, Congress did not intend this section to be a single " 'catch-all' provision for dissatisfied Union members." Horn v. Amalgamated Ass'n St. Elec., etc. Employees, Division 1303, 194 F.Supp. 560, 562 (E.D.Mich.1961). What plaintiffs in effect are complaining of is that they were denied the right of taking advantage of a situation to effectively disenfranchise a large segment of the membership whose interests, they maintain, are not in harmony with their own.

Moreover, the statute itself provides that the rights guaranteed are "subject to reasonable rules and regulations" contained in the Constitution and By-Laws of the union, thereby tempering the rights so conferred. See Hickey, The Bill of Rights of Union Members, 48 Geo.L.J. 226, 236 (1959). This qualifying language was not specifically included in the original proposal submitted by Senator McClellan. See II Legislative History of the LMRDA 1102(1) (1959). However, after initial passage of the McClellan provisions, Senator Kuchel proposed an amendment subsequently adopted which *inter alia* added the above clause concerning reasonable rules and regulations. During the course of the debate in the Senate, Senator McClellan read into the record the following statement: "This limitation that the unions might make reasonable rules relating to equal rights and free speech and assembly was implicit in the bill of rights as originally drafted just as it is in the Bill of Rights of the Federal Constitution, *to prevent abuses.*" II Legislative History, supra, 1294(3) (Emphasis added); id. at 1231(3) (Remarks by Senator Kuchel); cf., Hickey, supra at 231–32.

The case at bar would appear to present just such sort of a situation wherein, as viewed by the Board, a minority of the membership by reason of the convenience of the situation, under the cloak and protection of the rights guaranteed by the statute, have abused the rights so conferred and have attempted to disenfranchise a large section of the membership, and thereby deprive them of the rights guaranteed them by the very same statute. Not only is this the intention of plaintiffs, but they would have the Board, though it has the power to act in just this type of situation, sit idly by and permit this violation of the rights of a substantial majority of the membership and would have this Court prevent the Board from using the power so conferred.

In the case at bar there is a By-Law provision held by the Board to cover the situation presented before it. The decision of the Board, as the intra-union tribunal interpreting its By-Laws and, more important, fully cognizant of the entire situation presented to it, must be given due weight by this Court. Phillips v. Teamsters, etc. Local Union No. 560, 209 F.Supp. 768 (D.N.J.1962).

I find that the Board, bearing in mind its knowledge of all of the facts surrounding the dispute and the expertise that it necessarily possesses, reasonably interpreted a By-Law which is an obviously necessary one to preserve the integrity of the union and to prevent just the sort

of situation that transpired in the case at bar.

Thus plaintiffs have not shown the existence of a By-Law violative of the rights protected by Section 101 nor have they shown a violation of those Section 101 rights by reason of the Board's interpretation of its By-Laws. Accordingly, this Court is without jurisdiction to grant the relief petitioned for.

The Court of Appeals for the Second Circuit, in an analogous situation, has recently held that the federal courts under Section 101 are not empowered to control and direct union elections "on the theory that the right to vote is a right to cast an 'effective' vote, and that a vote cannot be effective unless the election is properly conducted in all its aspects." Robins v. Rarback, 325 F.2d 929, 930 (2d Cir. 1963).

With that decision in mind, the Court finds itself without jurisdiction under Section 101 to override a decision of a union tribunal which did not affect the "equal right to vote" protection of Section 101(a) (1). By the same token, plaintiffs have not shown a violation of Section 101(a) (2).

I might observe, parenthetically, that since the decision of the Board has not violated the statute, I find it unnecessary to pass on the corollary issue—whether the two resolutions, if permitted to stand, would have violated the rights guaranteed in Section 101(a) (1). See Kolmonen v. International Hod Carriers', etc. Union of America, 215 F.Supp. 703 (W.D.Mich.1963); Goldberg v. Marine Cooks & Stewards Union, 204 F.Supp. 844 (N.D.Calif.1962).

The foregoing shall constitute the Findings of Fact and Conclusions of Law under Rule 52(a) of the Federal Rules of Civil Procedure.

An examination of the complaint reveals that the sole basis of the Court's jurisdiction is the allegation of a violation of Section 101, jurisdiction being based on Section 102. The very same jurisdictional allegations and operative facts formed the basis for the within motion for a temporary injunction. It being the opinion of the Court that it does not have jurisdiction to dispose of the within motion, and it therefore appearing that the Court does not have jurisdiction of the subject matter in the complaint, the complaint is hereby dismissed on the Court' motion. See Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934); Brewery Bottlers & Drivers Union v. Int'l Bhd. of Teamsters, 202 F.Supp. 464 (E.D.N.Y.1962); 1 Barron & Holtzoff, Federal Practice and Procedure, § 21 at 91 (1960).

Accordingly, the injunction petitioned for will not be granted, and the complaint is hereby dismissed.

As a companion motion, in a companion action, Gurton v. Arons, 64 Civ. 2292 (July 23, 1964), plaintiffs seek to enjoin defendants (officers of Local 802 though sued herein as individuals) from refusing to carry out the provisions of the Gurton and Rothstein resolutions. In effect, plaintiffs seek a court directive ordering the defendants, as officers of the Local, to carry out the duties imposed upon them by the two resolutions; to wit, pre-election registration of members and the conduct of the election of officers by in-person balloting.

Since this motion deals with the same subject matter and controversy as 64 Civ. 2291, the Findings of Fact set forth supra in 64 Civ. 2291 are equally pertinent here and are hereby incorporated into this opinion constituting the Findings of Fact herein.

Jurisdiction of this Court is based on Section 501(a) & (b) of the LMRDA, 73 Stat. 535, 29 U.S.C. § 501(a) & (b) (Supp.1963).

Section 501(a) & (b) provides:

"§ 501.  Fiduciary responsibility of officers of labor organizations * * *

"(a) The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its mem-

bers as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. * * *

"(b) When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. *. * * "

The cause of action is premised on the assertion that "the officers of Local 802 * * * have failed and refused to carry out the fiduciary duties imposed upon them by the two amendments, asserting the invalid ruling of the Federation's officers as an excuse." Questions of jurisdiction aside, it seems clear that if this premise is wrong and the action of the Federation was not "invalid" then the officers of the Local have not breached their fiduciary duties.

Defendants initially attack the Court's jurisdiction to hear and determine the within motion as without the scope of protection of Section 501. Thus defendants assert that the coverage of Section 501 is limited to *financial* fiduciary duties. A plain reading of the statute would appear to support that conclusion. While the first sentence of the statute quoted *supra* states that officers of labor organizations occupy positions of trust with respect to the organization, the second sentence of the statute clearly defines the scope of the trust and the duty imposed on the officer-trustee. The duty as set forth in the statute relates to the handling of money and property of the union. Plaintiffs place great emphasis on the duty "to refrain from dealing with such organization[s] as an adverse party." However, immediately subsequent to that statement and as a corollary to it, the statute provides: "and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization."

The legislative history of the Section would appear to also be in accord with defendants' position that the Section relates solely to questions of financial dealings. Thus during the course of debate, Senators McClellan and Ervin made it quite clear that the Section would relate solely to matters of money and property. See II Leg. History 1129–31 (1959). Law Review comment, as well, in analyzing Section 501, has discussed the fiduciary obligation, solely in a financial context. See Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 823–29 (1960); Dugan, Fiduciary Obligations Under the New Act, 48 Geo.L.J. 277, 294–97 (1959); Symposium, Comparative Labor Law and Law of Employment Relations; Summers, Internal Relations between Unions and Their Members:

General Report, 18 Rutgers L.Rev. 236, 271–72 (1964) ; ibid., Aaron, United States Report, 18 Rutgers L.Rev. 279, 299–300 (1964) ; Note, 37 N.Y.U.L.Rev. 486, 507 (1962).

More important, however, is the fact that plaintiffs have not cited, nor has the Court been able to find, a decision under Section 501 which involved an alleged breach of duty in respect to matters other than finances. Thus, for example, Holdeman v. Sheldon, 204 F.Supp. 890 (S.D.N.Y.), aff'd, 311 F.2d 2 (2d Cir. 1962) cited by plaintiffs, involved a suit arising out of the issuance of checks and expenditure of certain funds.

In Coleman v. Brotherhood of Ry. & S. S. Clerks, 228 F.Supp. 276 (S.D.N.Y. 1964), plaintiffs *inter alia* alleged a violation of Section 501(a) by reason of the action of defendants "in suppressing needed information and knowledge * * * and in rushing the Resolution through in disregard of the Constitution", [id. at 280] thereby breaching their fiduciary obligations. The Court found itself lacking jurisdiction:

> "As for Title V, the Court sees nothing in the complaint to indicate that defendant Harrison was wilfully violating his fiduciary duties with respect to the money and property of the Brotherhood." Id. at 283.

Penuelas v. Moreno, 198 F.Supp. 441, 444 (S.D.Calif.1961) also contains similar language restricting Section 501 to matters "concerning monies or the property of the union."

Plaintiffs cite the following statement in Johnson v. Nelson, 325 F.2d 646, 651 (8th Cir. 1963) in support of their position :

> "In summary, we hold that § 501 imposes fiduciary responsibility in its broadest application and is not confined in its scope to union officials only in their handling of money and property affairs."

However, it is important to add that the case involved a suit by union members against the treasurer of the union and the complaint alleged that the treasurer and other officers occupying a position of trust had breached their fiduciary obligation by "their refusal to sign checks in payment of certain attorneys' fees and other expenses which had been approved by the membership." Id. at 647. Thus the above-cited statement is at most dictum in the case. Likewise, the statement in Parks v. IBEW, 203 F.Supp. 288, 295–296 (D.Md.1962), aff'd, 314 F.2d 886 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), that the broad statement in Section 501 emphasizes the nature of the duty as not being limited to pecuniary matters, is clearly dicta since the suit was brought under Sections 101, 302 and 609—*not* Section 501.

Moreover, even if it is assumed that Section 501 applies to breaches of fiduciary responsibility other than those involving money and property, there would appear to be no breach of any fiduciary responsibility in the instant case actionable under Section 501(b).

The fiduciary obligation allegedly breached here is the refusal to implement the two resolutions. However, pursuant to orderly intra-union procedure, the Board has declared these two resolutions null and void. As is clear from the Court's decision, supra, that decision by the Board has in no way been impaired. The defendants are acting pursuant to a direction by a supreme body in the union hierarchy and pursuant to Article 12, § 6, of the AFM By-Laws which states that the AFM decision is final and binding on both union and members. Plaintiffs, as members of the union, are bound by its Constitution and By-Laws as are officers of the Local. Those regulations constitute a contract between plaintiffs, the Local and the Federation which binds all parties unless in violation of the statute. Smith v. General Truck Drivers, etc. Union, Local 467, 181 F.Supp. 14, 17 (S.D.Calif.1960). The Federation's action has been held not to violate the statute; thus the Local, pursuant to that contract between the

parties, is bound by the Federation's ruling and must abide by it as must plaintiffs.

As I have stated previously, Judge Levet's decision related solely to the question of the refusal to submit the proposals to the membership and its relation to the Local's Constitution. It made no determination as to the substance of the proposals and, if enacted, their possible overtones as regards the Federation's Constitution.

The Federation is empowered by Article 12, § 6, to act in situations wherein it feels that the Locals have been forced to submit to "improper conditions". It has so acted in this case and, by force of that Section, the Local and its members "must submit to such decision".

Plaintiffs cite Johnson v. Nelson, supra, for the proposition that a Local need not submit itself to an improper decision by the International Union's Executive Board. But that argument presupposes a condition not present in the case at bar; to wit, an improper decision of the Executive Board. In the Johnson case, the Court based its decision in part on the fact "that International's eleventh-hour 'policy' directive was not based upon union constitutional authority." 325 F.2d at 654. However, in the case at bar the action by the Federation is specifically provided for and sanctioned by the Constitution and has been held, supra, to be a proper exercise of that power. As such, the Johnson case is inapposite.

Thus, the Local officers, rather than breaching any fiduciary obligations, are in fact acting in conformity with the Local's Constitution and the overriding AFM Constitution.

The foregoing shall constitute the Findings of Fact and Conclusions of Law under Rule 52(a) of the Federal Rules of Civil Procedure.

An examination of the complaint reveals that the sole basis of the Court's jurisdiction is the allegation of a violation of Sections 501(a) & (b) LMRDA. The very same jurisdictional allegation and operative facts formed the basis for the within motion for a preliminary injunction. It being the opinion of the Court that it does not have jurisdiction to dispose of the within motion, and it therefore appearing that the Court does not have jurisdiction of the subject matter in the complaint, the complaint is hereby dismissed on the Court's motion. See Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162 (1934); Brewery Bottlers & Drivers Union v. Int'l Bhd. of Teamsters, 202 F.Supp. 464 (E.D.N.Y.1962); 1 Barron & Holtzoff, § 21 at 91 (1960).

Accordingly, as was the case in Guarnaccia v. Kenin, 64 Civ. 2291, supra, the injunction petitioned for will not be granted, and the complaint is hereby dismissed.

Settle orders on notice.